**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HI-TECH AUTOMOTIVE, LTD., an Illinois corporation, and AERON DEVERA, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No.   16 cv 4230 |
| THE TOWN OF CICERO, an Illinois municipality, LARRY DOMINICK, in his individual capacity, ANTONIO MARZANO, in his individual capacity, and ISMAEL VARGAS, in his individual capacity, | ) ) ) ) ) | |
| Defendants. | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT, VIOLATIONS OF
18 U.S.C. § 1962(c)-(d) AND EMERGENCY INJUNCTIVE RELIEF**

NOW COME Plaintiffs, Hi-Tech Automotive, Ltd. ("Hi-Tech") and Aeron Devera ("Mr. Devera"), complaining of Defendants, The Town of Cicero ("Cicero"), Larry Dominick, in his individual capacity ("Mr. Dominick"), Antonio Marzano, in his individual capacity ("Mr. Marzano") and Mr. Vargas, in his individual capacity ("Mr. Vargas"), and in support thereof, state as follows:

## Summary of the Dispute

Mr. Devera began operating Hi-Tech in Cicero in 2009. Hi-Tech is in the business of towing abandoned vehicles from the interstate and the business of storing vehicles and personal property. In mid-2014, Mr. Dominick, the president of Cicero, called Mr. Devera into his office for a meeting. During this meeting, Mr. Dominick accused Mr. Devera of "stealing from him" by not paying parking lot taxes to Cicero. Mr. Devera denied that he was stealing from Mr. Dominick and told Mr. Dominick that he had issued business licenses to Hi-Tech for each of the last six years to operate this

1

specific type of business without mentioning a tax obligation. Mr. Dominick told Mr. Devera that Hi-Tech owed Cicero $400,000 for back taxes, and if the taxes weren't paid, then he would revoke Hi-Tech's business license and prevent Mr. Devera from operating his business.

In October of 2014, Mr. Devera entered into a written settlement agreement with Cicero, in which he agreed to pay: 1.) $60,000 to resolve the disputed back taxes; and 2.) $2,000 per month for as long as he operated Hi-Tech in Cicero to comply with the parking lot tax moving forward. In consideration for his agreement to pay these amounts, Cicero agreed not to file any future complaints seeking the revocation of his business license if Hi-Tech made timely payments under the agreement.

Despite Mr. Devera and Hi-Tech complying with all obligations under the settlement agreement, paying all of the $60,000 in back taxes to Cicero and timely paying the $2,000 per month to comply with Hi-Tech's agreed upon tax obligation, Mr. Dominick decided in mid-2015 that he wanted Mr. Devera and Hi-Tech to pay more than $2,000 per month. Accordingly, he hatched a scheme with two of his subordinates, Mr. Marzano and Mr. Vargas, who agreed to begin intimidating Mr. Devera in an attempt to force Hi-Tech to pay more than $2,000 per month.

Initially, the intimidation began with monthly visits to Hi-Tech's business. During these visits, Mr. Vargas and Mr. Marzano told Hi-Tech employees that they were there to determine the amount that Hi-Tech was obligated to pay in parking lot taxes. Additionally, they told Mr. Devera that the settlement agreement was no longer enforceable and that he would have to begin paying $7,000 per month in parking lot taxes. Mr. Devera advised that he had a settlement agreement that only required Hi-Tech to pay $2,000 per month and refused to pay the additional amounts.

When Mr. Devera refused to bend to the initial intimidation, Mr. Marzano resorted to use of the mail in an attempt to defraud Mr. Devera by sending him a letter misrepresenting that an

2

additional $7,080 was due from Hi-Tech in parking lot taxes and threatening to revoke Hi-Tech's business license if Mr. Devera didn't bend to the extortionate tactics. Again, Mr. Devera refused.

In furtherance of this scheme, Mr. Dominick called on Michael Del Galdo and his law firm, the Del Galdo Law Group, LLC, the same firm who originally negotiated the settlement agreement with Mr. Devera, to participate in the scheme. Mr. Del Galdo agreed with Mr. Dominick to file a complaint on his behalf, seeking the revocation of Hi-Tech's business license and in furtherance of the scheme to extort additional money out of Mr. Devera. Mr. Del Galdo knew that Hi-Tech was not required to pay more than $2,000 per month, because he personally negotiated and offered the specific term in the settlement agreement that required Hi-Tech to pay $2,000 per month as long as it remained in business in Cicero. Regardless, Mr. Del Galdo agreed to participate in the intimidation scheme and his law firm filed a complaint on behalf of Mr. Dominick seeking the revocation of Hi-Tech's business license.

There is currently a hearing set in the revocation proceeding on April 13, 2016. If the hearing proceeds and Hi-Tech's business license is revoked, Mr. Devera and Hi-Tech will be irreparably harmed. Therefore, Plaintiffs are seeking: 1.) Emergency injunctive relief via an order staying and/or requiring dismissal of the revocation proceeding during the pendency of this litigation, 2.) A declaratory judgment finding that Hi-Tech is only required to pay Cicero $2,000 per month to comply with the parking lot tax ordinance; 3.) Damages for Cicero's breach of the settlement contract; and 4.) Damages for the Defendants' violations of the Civil Rico statute (18 U.S.C. § 1962(c)-(d)).

## Statement of Facts Common to All Counts

### I.      Parties, Venue and Jurisdiction

1.      Hi-Tech is an Illinois corporation with its principal place of business located at 1661 S. 46th Court, Cicero, Illinois 60804 ("Subject Premises").

2.      Aaron Devera is a citizen of the state of Illinois and is the sole owner of Hi-Tech.

3.      Cicero is an Illinois municipality and a southwestern suburb of Chicago.

4.      Mr. Dominick is a citizen of the state of Illinois and is the president of the town of Cicero.

5.      Mr. Marzano is a citizen of the state of Illinois and is the revenue director for the town of Cicero.

6.      Mr. Vargas is a citizen of the state of Illinois and is an investigator or inspector for the town of Cicero.

7.      The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §1331, because Plaintiffs' claims arise under 18 U.S.C. §1962.  In addition, pursuant to 28 U.S.C. §1367, the Court has supplemental jurisdiction over Plaintiffs' related state law claims that form part of the same case or controversy under Article III of the Constitution.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because, one or more of the Defendants reside in the Northern District of Illinois, and all the events and omissions giving rise to Plaintiffs' claims took place in the Northern District of Illinois.

### II.      Hi-Tech is in the business of towing inoperable vehicles and storing personal property.

9.      From 1995 through the present, Mr. Devera has owned and operated Hi-Tech.  In 2009, Mr. Devera moved the operations of Hi-Tech from Chicago to Cicero, and it has operated in

Cicero at the Subject Premises from 2009 through today. The business of Hi-Tech is split into two separate components.

10.     With respect to the first component, Hi-Tech has a contract with the Illinois State Police for towing vehicles from the interstate that have been abandoned by their owners or are otherwise inoperable. Hi-Tech receives notice of the location and type of the vehicle from the State Police and tows the identified vehicles to the Subject Premises. The vehicles remain there until they are recovered by the owner, claimed by an insurance company or officially declared abandoned, in which case they become the property of Hi-Tech.

11.     With respect to the second component, Hi-Tech enters into contracts with customers that allow its customers to have access to a storage space on the Subject Premises. These storage spaces are uncovered and approximately 10' x 25' in size. The majority of its customers use these spaces to store inoperable cars with the intent of repairing and selling them. Approximately five cars can fit onto one storage space. Some of the storage spaces are used by semi-truck drivers to store their semi-truck or tractor when it is not in use. One semi-truck can fit on each storage space. The remaining storage spaces are used for the storage of non-vehicular personal property.

12.     The Subject Premises resembles a junkyard more than it does a traditional parking lot. A substantial number of the vehicles on the Subject Premises are not in operating condition. It is located in an industrial part of Cicero. It is not used as a parking lot where people park their cars, go to work or go shopping, and return to their cars to drive home. Rather, it is mainly used to store inoperable vehicles and other personal property.

13.     Plaintiffs have an installment agreement with the owner of the Subject Premises. Pursuant to the agreement, Plaintiffs are paying $6,585.31 per month to pay off a $525,000 note for

the purchase of the Subject Premises.

**III.    The Cicero municipal code authorizes the imposition of a tax on parking lot owners.**

14.    A portion of the Cicero municipal code authorizes the imposition of a tax on parking lot owners based on the number of operable vehicles that park in its lots on a daily, weekly and/or monthly basis.  *See* Cicero Municipal Code Section 106-326, *et seq*. and Section 106-491, *et seq*. Copies of these ordinances are attached hereto as Exhibit A.

15.    However, these ordinances require that in order for the tax to apply, the vehicles most be in operating condition or "self-propelled" for the tax to be assessed.  *See* Exhibit A.

16.    Between 2009 and 2014, Cicero and Mr. Dominick issued annual business licenses to Hi-Tech.  However, Mr. Devera was never informed at any point during that five year period that Hi-Tech was subject to the parking lot tax ordinances and Mr. Dominick never took any action to enforce the parking lot tax ordinances against Hi-Tech during this time period, presumably because he knew that Hi-Tech was more of a junkyard than a parking lot and the parking lot tax ordinance was likely inapplicable to Hi-Tech.

**IV.    In 2014, Mr. Dominick began intimidating Mr. Devera by threatening to revoke Hi-Tech's business license unless it paid Cicero $400,000.**

17.    In 2014, Mr. Dominick organized a meeting at his office with Mr. Devera and Fran Reitz, the Town Collector.

18.    During this meeting, Mr. Dominick told Mr. Devera, "You are stealing from me." He told Mr. Devera that he owes Cicero $400,000 in back taxes under the parking lot ordinance.  Mr. Devera told him that Hi-Tech had never been requested to pay taxes under the ordinance and that he had just issued Hi-Tech its annual business license without requesting tax payments.  Mr.

6

Dominick told Mr. Devera that if he did not pay the demanded $400,000 to Cicero, then Mr. Dominick would revoke Hi-Tech's business license and prevent Mr. Devera from operating Hi-Tech in Cicero.

19.     Hi-Tech never owed $400,000 under the parking lot tax ordinance. Rather, this was an amount made up by Mr. Dominick that he used to intimidate Mr. Devera and Hi-Tech into paying under the threat of revoking the business license.

20.     Mr. Devera was worried that Mr. Dominick was going to close Hi-Tech and prevent him from operating his business. This was very problematic for Mr. Devera, because he is purchasing the Subject Premises under an installment contract and he uses the revenue from Hi-Tech to make the monthly payments. Accordingly, if Mr. Dominick revoked Hi-Tech's business license as he threatened, then Mr. Devera would not only be unable to operate Hi-Tech, but he would also lose the revenue from the business and be unable to continue making payments for the Subject Premises under the installment contract.

**V.    Cicero and Hi-Tech negotiated a settlement with respect to the amount Mr. Dominick requested to be paid pursuant to the parking lot tax ordinance.**

21.     After the meeting with Mr. Dominick, Mr. Devera was worried that if he could not pay the money that Mr. Dominick had demanded, then Mr. Dominick would shut down Hi-Tech's business operation. Accordingly, he hired an attorney to negotiate whether Hi-Tech was the type of business that required compliance with the parking lot ordinance, and if so, how much he would be required to pay in both back taxes and moving forward.

22.     Mr. Dominick and Cicero hired Michael Del Gado and his law firm, Del Gado Law Group, LLC, for this negotiation. Mr. Del Gado negotiated the resolution of this dispute with Mr.

Devera's and Hi-Tech's attorney.

23. Some of these negotiations were reflected in email communications between Mr. Del Gado and Mr. Devera's/Hi-Tech's attorney. The email communications dated October 16, 2014 and October 17, 2014 made it clear there were two key components to the settlement: 1.) Hi-Tech would agree to pay $60,000 in back taxes over the course of 11 months; and 2.) Hi-Tech would be required to pay a flat tax of "$2,000 per month to cover all parking and storage taxes due from [Hi-Tech], regardless of the quantity and volume of the vehicles" and that the $2,000 monthly payment shall continue "for as long as [Mr. Devera] operates [Hi-Tech] in the Town." A copy of the email correspondence is attached as Exhibit B. Moreover, this correspondence shows that it was Cicero that made the offer of the $2,000 monthly flat tax payment and that the $2,000 monthly payment would continue as long as Hi-Tech remains in business in Cicero. *See* Ex. B.

24. The terms of the settlement were reduced to a written agreement. A copy of the settlement agreement is attached hereto as Exhibit C. An enumerated purpose of the agreement was to avoid "future controversy, costs, legal fees, inconvenience, **and any future litigation regarding these matters, including revocation proceedings**." *See* Ex. C, p. 1 (emphasis added).

25. Pursuant to the settlement agreement, Hi-Tech agreed to pay Cicero $60,000 in back taxes via 11 monthly payments, with the first payment in the amount of $10,000 and the remaining 10 payments in the amount of $5,000. *See* Ex. C, p. 1 and exhibit A thereto.

26. In addition to resolving the dispute regarding the amount of back taxes allegedly due, the parties also documented the above-referenced agreement for Hi-Tech to pay a flat tax of $2,000 per month for as long as it remains in business in Cicero, as follows:

Licensee[1] will continue to make current amounts due ("Current") under Sections 106-329 & 106-495 of the Town of Cicero Ordinances without delay. **Licensee agrees that the current amount due on a monthly basis is a flat tax, regardless of quantity and volume, and thereby waives the calculation provided in the Town Ordinances. The $2,000 will be paid to the Town Collector no later than the last day of the month succeeding the month for which the tax was due**. Payments should be made during regular Town Hall Business Hours. Should the last day of the month fall on a Friday, Saturday, Sunday or Holiday, then payment is due on the preceding business day. The first current payment will be due on October 30, 2014 and **will continue monthly as long as licensee remains in business in the Town of Cicero.**

*See* Ex. B, p. 1-2 (emphasis added).

## VI. Hi-Tech fully complied with its obligations under the settlement agreement.

27. Hi-Tech has fully complied with all of its obligations under the settlement agreement and has made all of the payments required under the agreement in a timely manner.

28. Hi-Tech made the initial $10,000 payment and all ten of the subsequent $5,000 monthly payments for the $60,000 in "Backpay" that was due under the settlement agreement.

29. Additionally, Hi-Tech has also made the $2,000 payment on a monthly basis and has continued to make that monthly payment on a timely basis from the date of the agreement through the present.

30. Accordingly, by fully complying with its obligations to pay the "Backpay" and "Current" payments under the settlement agreement, Hi-Tech has satisfied all of its agreed upon obligations under the parking lot tax ordinances.

---

[1]Hi-Tech is referred to as "Licensee" in the settlement agreement.

**VII.  Mr. Dominick, Mr. Marzano and Mr. Vargas agreed to intimidate, extort and defraud Mr. Devera in an effort to force him to pay more money from Hi-Tech.**

31.     At some point in 2015, Mr. Dominick decided that he wanted Hi-Tech to pay more to Cicero than the $2,000 per month that the parties had agreed to in the settlement agreement.

32.     Accordingly, on information and belief, Mr. Dominick engaged Mr. Marzano and Mr. Vargas in an effort to intimidate Mr. Devera and to force Hi-Tech into paying more money to Cicero than it was required to pay under the settlement agreement.

33.     On information and belief, Mr. Dominick, Mr. Marzano and Mr. Vargas agreed to use intimidation, extortion and mail fraud to coerce Mr. Devera and Hi-Tech Auto into making larger payments to Cicero than the $2,000 per month that was required under the settlement agreement.

34.     Beginning in July 2015 and continuing through January 2016, Mr. Vargas and Mr. Marzano went to the Subject Premises on several occasions.  During these trips, they took pictures of the Subject Premises, including pictures of Hi-Tech employees and the property stored on the Subject Premises.

35.     Hi-Tech employees asked Mr. Vargas and Mr. Marzano why they were at the Subject Premises.  Mr. Vargas and Mr. Marzano stated that they were entitled to be on the property and entitled to conduct inspections of the vehicles maintained on the Subject Premises to determine the amount that Hi-Tech Auto was required to pay under the parking lot tax ordinances.

36.     During one of these inspections, Mr. Marzano told Mr. Devera that he was not paying the amount that he was required to pay to Cicero for the parking lot tax ordinances.  Mr. Marzano told Mr. Devera that he owed Cicero several thousand dollars more per month than the $2,000 that he was currently paying.  Mr. Devera told Mr. Marzano he had an agreement to pay $2,000 per

month.  Mr. Marzano told Mr. Devera that the agreement was now terminated.

37.    Mr. Marzano's statements to Mr. Devera were false.  Mr. Marzano made these statements to Mr. Devera for the purpose of attempting to coerce Mr. Devera and Hi-Tech into paying Cicero more than the $2,000 per month that they were contractually obligated to pay.

38.    Mr. Vargas and Mr. Marzano knew that Hi-Tech was only required to pay Cicero the flat amount of $2,000 on a monthly basis pursuant to the settlement agreement.  These so-called "inspections" were a sham and were intended to intimidate Mr. Devera into paying more money.

39.    When Mr. Devera disputed that Hi-Tech owed more than the $2,000 it was paying on a monthly basis, Mr. Marzano told him that he could initiate an action to have Hi-Tech's business license taken away unless Mr. Devera agreed to begin paying more than $2,000 on a monthly basis.  Mr. Marzano demanded that Hi-Tech begin paying $7,000 on a monthly basis, but Mr. Devera refused to pay this amount.

40.    Mr. Marzano and Mr. Vargas have continued to conduct these sham inspections on a monthly basis between July 2015 through the present in furtherance of their agreement with Mr. Dominick to attempt to force Hi-Tech to pay more than it was obligated to pay to Cicero under the settlement agreement.

**VIII.   Mr. Marzano used the mail to threaten Mr. Devera in furtherance of the goal to force Hi-Tech to pay more than it is contractually obligated to pay.**

41.    On January 7, 2016, Mr. Marzano mailed a letter to Hi-Tech and Mr. Devera.  A copy of the letter is attached hereto as Exhibit D.

42.    In the letter, Mr. Marzano threatened to revoke Mr. Devera's business license to operate Hi-Tech unless he agreed to pay an additional $7,080.00 within three days.  Specifically, Mr.

Marzano stated:

> You currently owe $7,080.00. Your failure to pay taxes due and owing the Town of Cicero subjects you to the revocation of your business license. Thus, you should make the payment to the collector's office as soon as possible, but no later than the date of the hearing to revoke your business license before 5pm January 10, 2016.

*See* Exhibit C.

43.     On information and belief, Mr. Dominick told Mr. Marzano to threaten Mr. Devera with revoking Hi-Tech's business license in furtherance of their efforts to coerce Hi-Tech into paying more money than it was required to pay under the settlement agreement.

44.     The statement in the letter that Hi-Tech currently owes $7,080.00 is false. At all times, Hi-Tech has made all required $2,000 monthly payments in a timely manner. Therefore, the threat that Mr. Marzano could revoke Hi-Tech's business license for failure to pay $7,080 is also a misrepresentation.

45.     Mr. Marzano sent the letter with the intent to intimidate, extort and defraud Mr. Devera and Hi-Tech.

**IX.     Mr. Dominick recruited Mr. Del Galdo and his law firm to initiate proceedings to revoke Hi-Tech's business license in an effort to further intimidate Mr. Devera and Hi-Tech into paying more than is required under the settlement agreement.**

46.     When Mr. Devera refused to pay the additional $7,080.00 that Mr. Marzano demanded, Mr. Dominick contacted Mr. Del Galdo and requested his firm to file a complaint seeking the revocation of Hi-Tech's business license.

47.     Mr. Del Galdo and his law firm knew that filing a complaint to seek the revocation of Hi-Tech's business license would be in bad faith and without justification, because Mr. Del Galdo knew that Hi-Tech was only required to pay $2,000 per month in order to fully comply with any

obligations it may have under the parking lot tax ordinance. Mr. Del Galdo knew this because he specifically offered and negotiated this term into the previous settlement agreement.

48.     Regardless of this knowledge, Mr. Del Galdo and Del Galdo Law Group, LLC entered into an agreement with Mr. Dominick to file a complaint to revoke to Hi-Tech's business license for the purpose of putting additional pressure on Mr. Devera and Hi-Tech to pay more than the $2,000 per month currently being paid under the settlement agreement.

49.     On January 20, 2016, despite knowing that Hi-Tech was current with its $2,000 monthly payment obligation, Mr. Del Galdo and Del Galdo Law Group, LLC filed a complaint to revoke Hi-Tech's business license. The complaint was filed with the intent to intimidate Mr. Devera and Hi-Tech into paying more than the $2,000 per month they were obligated to pay. A copy of the complaint is attached hereto as Exhibit E. Mr. Dominick authorized the Del Galdo Law Group, LLC to execute the complaint on his behalf and as his designee, and Michael Del Galdo assigned an attorney in his firm with the task of preparing and filing the complaint. *See* Ex. E, p. 3.

50.     In the complaint, there are allegations that Hi-Tech has failed to pay the amounts that it is required to pay under the parking lot tax ordinances. *See* Ex. E, p. 2. These allegations are false. Mr. Dominick, Mr. Del Galdo and the Del Galdo Law Group, LLC knew that these statements were false, because they knew that Hi-Tech was only required to pay Cicero $2,000 per month pursuant to the settlement agreement and that Hi-Tech was current with its payments.

51.     Mr. Dominick and Mr. Del Galdo agreed to make these false allegations in furtherance of their efforts to force Mr. Devera and Hi-Tech to pay more than they were obligated to pay under the threat of wrongfully revoking Hi-Tech's business license.

52.     The complaint seeks the revocation of Hi-Tech's business license and is intended as

a threat to Mr. Devera that if he doesn't pay more than $2,000 per month, then Mr. Dominick and Mr. Del Galdo will revoke his business license to operate Hi-Tech.

53.     Mr. Dominick and Mr. Del Galdo knew that revoking Hi-Tech's business license would cause substantial financial harm and made this threat with the intent of coercing Mr. Devera into paying more than he was obligated to pay under the settlement agreement.

X.     **Mr. Dominick and the Del Galdo Law Group, LLC refuse to dismiss the bad faith revocation proceeding, because they are using the proceeding in furtherance of their agreement to intimidate Mr. Devera and extort additional money from Hi-Tech.**

54.     Mr. Devera retained counsel to represent Hi-Tech in the revocation proceeding.

55.     Hi-Tech's counsel contacted an attorney from the Del Gado Law Group, LLC, to request a dismissal of the revocation proceeding, because Hi-Tech is in full compliance with the settlement agreement.

56.     Despite providing a copy of the executed settlement agreement and proof of all payments in compliance with the settlement agreement to the Del Galdo Group, LLC, Mr. Dominick and Mr. Del Galdo have refused to dismiss the bad faith revocation proceeding.   Mr. Dominick and Mr. Del Galdo are using this proceeding to intimidate Mr. Devera in furtherance of their efforts to extort additional money from Hi-Tech.

57.     An evidentiary hearing on Cicero's complaint seeking to revoke Hi-Tech's business license is set for April 13, 2016 at 10am.  Both Mr. Vargas and Mr. Marzano are scheduled to be witnesses at this hearing.

58.     If the hearing officer[2] grants the requests sought in the bad faith complaint and

---

[2]The hearing officer assigned to the revocation proceeding is Anthony Bertuca.  On information and belief, Mr. Bertuca also happens to be the town attorney for Berwyn, the neighboring municipality to Cicero.

revoke's Hi-Tech's business license, then Mr. Devera and Hi-Tech will suffer irreparable damage.

59.     Plaintiffs demand a trial by jury on the claims below.

**Count I- Declaratory Judgment**
**Plaintiffs vs. All Defendants**

1-59.     Plaintiffs reallege and incorporate the allegations contained in paragraphs 1-59 into paragraphs 1-59 of Count I.

60.     The settlement agreement is unambiguous and clearly provides that Hi-Tech is required to pay $2,000 per month in order to comply with the parking lot tax ordinances and this amount shall be paid for as long as Hi-Tech remains in business in Cicero.

61.     Cicero has taken the position that the settlement agreement is no longer enforceable and that Hi-Tech has to pay more than $2,000 per month in parking lot taxes.

62.     Accordingly, there is an actual conflict between the parties regarding whether the settlement agreement is enforceable, and if so, whether Plaintiffs are in compliance with the agreement by paying $2,000 per month.

63.     There is a hearing scheduled in two days, on April 13, 2016, where Cicero, Mr. Dominick and Del Galdo Law Group, LLC intend to present Mr. Vargas and Mr. Marzano as witnesses in an effort to revoke Hi-Tech's business license.  Accordingly, the conflict is both real and immediate.

WHEREFORE, Plaintiffs pray for judgment against the Town of Cicero, Larry Dominick, Antonio Marzano, and Ismael Vargas on Count I, a declaration by the Court that the settlement agreement is enforceable, a declaration by the Court that Hi-Tech is required to pay $2,000 per month in order to comply with the parking lot tax ordinances, and any other relief the Court deems

15

necessary and just.

### Count II- Temporary Restraining Order, Preliminary Injunction and Permanent Injunction (Fed. R. Civ. P. 65) and/or Writ of Mandamus
### Plaintiffs vs. The Town of Cicero and Mr. Dominick

1-59.    Plaintiffs reallege and incorporate the allegations contained in paragraphs 1-59 into paragraphs 1-59 of Count II.

60.    Plaintiffs have a clear right under the settlement agreement to pay $2,000 per month in order to be in full compliance with the parking lot tax ordinances.  So long as Plaintiffs comply with this obligation, they have also have a clear right not to have the business license for Hi-Tech revoked for the sole reason of not making sufficient payments under the parking lot tax ordinance.

61.    Despite being in full compliance with the settlement agreement, and therefore, also in full compliance with their obligations under the parking lot tax ordinances, Cicero, under the direction of Mr. Dominick, Mr. Del Galdo and the Del Galdo Law Group, LLC, has filed a complaint to revoke the business license of Hi-Tech solely for alleged non-compliance with the parking lot tax ordinance.

62.    There is no adequate remedy at law that will remedy the wrongful revocation of Hi-Tech's business license.

63.    Plaintiffs will suffer irreparable harm if the April 13, 2016 proceeds and Hi-Tech's business license is revoked, because among other things, they will lose their right and opportunity to purchase the Subject Premises, they will be unable to perform their contract with the Illinois State Police and they will have to terminate the employment of Hi-Tech's empoyees.

64.    The harm to Plaintiffs resulting from the revocation of Hi-Tech's business license greatly outweighs any perceived harm to Defendants, which may result from the stay or dismissal

16

of the revocation proceeding.

65.     There is a strong likelihood that Plaintiffs will prevail on the Declaratory Judgment claim set forth in Count I, the Breach of Contract claim set forth in Count III and the Civil RICO claims set forth in Counts IV and V.

66.     Requiring Defendants to stay or dismiss the bad faith revocation proceeding during the pendency of this suit would not harm the public interest.

WHEREFORE, Plaintiffs pray for judgment in their favor and against the Town of Cicero and Mr. Dominick, issuing a mandatory injunction and/or a writ of mandamus requiring a stay or dismissal of the revocation proceeding during the pendency of this proceeding, and any other relief the Court deems necessary and just.

**Count III- Breach of Contract**
**<u>Plaintiffs vs. Town of Cicero</u>**

1-59.   Plaintiffs reallege and incorporate the allegations contained in paragraphs 1-59 into paragraphs 1-59 of Count III.

60.     Plaintiffs have fully complied with all of their obligations under the settlement agreement.

61.     Part of the consideration that Cicero gave to Plaintiffs for their agreement to make the Backpay and Current payments, as defined by the settlement agreement, was Cicero's agreement not to initiate "any future litigation matters regarding these matters, including revocation proceedings." *See* Ex. C, p. 1.

62.     Cicero breached the settlement agreement by filing the complaint to revoke Hi-Tech's business license. Cicero also breached the covenant of good faith and fair dealing.

17

63.     As a direct result of its breach of the settlement agreement, Cicero has damaged Plaintiffs, including but not limited to the attorneys' fees they were required to incur in defending against the bad faith proceeding to revoke Hi-Tech's business license.

WHEREFORE, Plaintiffs pray for judgment in their favor and against the Town of Cicero for the actual damages sustained, costs, interest and any other relief the Court deems necessary and just.

## Count IV- 18 U.S.C. 1962(c): Substantive Civil RICO Violations
## Plaintiffs vs. All Defendants

1-59.   Plaintiffs reallege and incorporate the allegations contained in paragraphs 1-59 into paragraphs 1-59 of Count IV.

60.     The aforementioned wrongful conduct of Mr. Dominick, Mr. Vargas, Mr. Marzano, Mr. Del Galdo and the Del Galdo Law Group, LLC constitutes the conduct of an enterprise through a pattern of racketeering activity.

61.     The Town of Cicero constitutes an enterprise.  In the alternative, Mr. Dominick, Mr. Vargas, Mr. Marzano, Mr. Del Galdo and the Del Galdo Law Group, LLC constitute an association in fact enterprise.

62.     Mr. Dominick, Mr. Vargas, Mr. Marzano, Mr. Del Galdo and the Del Galdo Law Group, LLC are all associated with the RICO enterprise.

63.     The purpose of the RICO enterprise is force, extort, coerce and defraud Plaintiffs into paying more money than they are obligated to pay to Cicero.

64.     Mr. Dominick, Mr. Vargas, Mr. Marzano, Mr. Del Galdo and the Del Galdo Law Group, LLC each understood the purpose of the enterprise, agreed to participate in furtherance of

18

its goal and understood that the enterprise extended beyond their individual role.

65.     The aforementioned wrongful conduct of Mr. Dominick, Mr. Vargas, Mr. Marzano, Mr. Del Galdo and the Del Galdo Law Group, LLC satisfies the requisite elements of and is sufficient to establish the predicate acts of violation of the Illinois Intimidation Statute (720 ILCS 5/12-6), the Hobbs Act and conspiracy to violate the Hobbs Act (18 U.S.C. §1951) and mail fraud (18 U.S.C. §1341).

66.     These predicate acts were performed: 1.) in furtherance of the enterprise's goal of forcing Plaintiffs to pay more money to Cicero than they were obligated to pay, 2.) against the same victims (Mr. Devera and Hi-Tech) and 3.) By the same group of related participants. These predicate acts were not isolated events.

67.     The fact that the predicate acts are ongoing demonstrates that they constitute a threat of continuing activity.

68.     Cicero and its activities when considered in their entirety affect interstate commerce. In the alternative, the actions of the association in fact enterprise, when considered in their entirety affect interstate commerce.

69.     Plaintiffs were damaged as a direct result of the predicate acts committed by Defendants.

WHEREFORE, Plaintiffs pray for judgment in their favor and against the Mr. Dominick, Mr. Vargas and Mr. Marzano, in the amount of three times their actual damages, attorney's fees, experts' fees, court costs, an order restraining Defendants from further pressuring Hi-Tech to pay more than $2,000 per month in order to comply with the parking lot tax ordinance and any other relief the Court deems necessary and just.

## Count V- 18 U.S.C. 1962(D): Civil RICO Conspiracy
## Plaintiffs vs. All Defendants

1-69.    Plaintiffs reallege and incorporate the allegations contained in paragraphs 1-69 of Count IV into paragraphs 1-69 of Count V.

70.    Mr. Dominick, Mr. Vargas, Mr. Marzano, Mr. Del Galdo and the Del Galdo Law Group, LLC agreed to participate in the affairs of the RICO enterprise, including the use of intimidation, extortion and mail fraud to accomplish the goals of the RICO enterprise.

71.    Mr. Dominick, Mr. Vargas, Mr. Marzano, Mr. Del Galdo and the Del Galdo Law Group, LLC agreed that these predicate acts would be committed by members of the RICO enterprise.

72.    The predicate acts committed by Mr. Dominick, Mr. Vargas, Mr. Marzano, Mr. Del Galdo and the Del Galdo Law Group, LLC were the proximate cause of damage to Plaintiffs.

WHEREFORE, Plaintiffs pray for judgment in their favor and against the Mr. Dominick, Mr. Vargas, and Mr. Marzano in the amount of three times their actual damages, attorney's fees, experts' fees, court costs, an order restraining Defendants from further pressuring Hi-Tech to pay more than $2,000 per month in order to comply with the parking lot tax ordinance and any other relief the Court deems necessary and just.

Respectfully submitted,
HI-TECH AUTOMOTIVE, LTD., an Illinois
corporation and AERON DEVERA

By:    s/ Riccardo A. Di Monte
One of the Attorneys for Plaintiffs

Riccardo A. DiMonte
rdimonte@dimontelaw.com

20

ARDC: 6191706
Ryan R. Van Osdol
ARDC # 6297823
rvanosdol@dimontelaw.com
DIMONTE & LIZAK, LLC
216 West Higgins Road
Park Ridge, Illinois 60068
(847) 698-9600 / (847) 698-9623 fax
Firm ARDC:  768